IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
NOVEMBER 17, 2003 Session

## JEANNE L. SCHUETT v. EGON HORST SCHUETT, JR.

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-001433-02      Rita Stotts, Judge**

---

**No. W2003-00337-COA-R3-CV - Filed March 31, 2004**

---

This case concerns issues of property division, alimony, attorney's fees, child support and dependency exemptions, arising from the divorce of Husband and Wife. The trial court, after the decree of divorce and the classification of the property of the parties as either marital or separate, divided the property, awarded Wife alimony *in solido*, ordered Husband to pay Wife's attorney's fees, set a floating child support amount for Husband to pay, and divided the dependency exemptions of the parties' three minor children. For the following reasons, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Reversed in Part and Remanded**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Stuart B. Breakstone, Memphis, TN, for Appellant

Mitchell D. Moskovitz, Adam N. Cohen, Memphis, TN, for Appellee

**OPINION**

**Facts and Procedural History**

Jeanne L. Schuett ("Wife") and Egon H. Schuett ("Husband") were married on November 14, 1987. The parties originally lived in Pennsylvania, where they moved on two different occasions because of Husband's employment. The parties subsequently moved to Memphis, Tennessee, for Husband's job with the Masco Corporation. Husband and Wife had three minor children during the marriage and lived together until they separated in March 2002.

Wife holds a degree in medical anthropology from Pennsylvania State University. Wife stated that such degree can lead to positions in teaching or research, though she would require a graduate degree for such positions. Husband received a degree in accounting also from Pennsylvania State University. In the beginning of the marriage, Wife worked full time as a data coordinator for a pharmaceutical company, earning approximately $30,000 per year. She ceased working full time in 1990 when the parties' first child was born. She continued to work part time as a sleep research technician for the University of Pennsylvania and would have earned $30,000 per year had she worked full time at such position. In 1994, Wife and Husband decided that Wife would no longer work in order for her to fulfill the role of homemaker. As a result, Husband became the primary wage earner for the parties. As of the time of trial, Wife was searching for employment, but had been unsuccessful.

Husband testified that his income was $145,231 in 2000 and $158,015 in 2001. Husband also explained that his current position with the Eaton Corporation, like his position at Masco, utilizes a bonus system in which he can earn up to 81% of his base salary as a bonus and have this bonus amount added to his base salary. Husband's base salary with Eaton is $105,000.

For the parties' first marital residence, they had insufficient finances and, therefore, they borrowed $50,000 from Wife's parents. Husband and Wife repaid $10,000 of this loan at which time Wife's father passed away and Wife's mother forgave the remaining $40,000 owed on the loan. The $40,000 amount forgiven remained in the equity of the parties' home and was used in downpayments for subsequent homes.

In addition, early in the marriage, Wife inherited an aggregate amount of $600,000 after the deaths of her father, grandfather, and sister, and this money was placed in a PaineWebber investment account. Husband's name never appeared on the account and, rather than using the dividends or capital gains for day-to-day expenses, the income from such account was reinvested each year back into the account. Husband testified that he did, on occasion, speak with the financial advisor at PaineWebber, but Wife disputed such participation by Husband. However, Husband did pay the taxes on the dividends and capital gains the investment account generated over the course of the marriage from his employment income. Such account generated income, ranging from approximately $18,000 to $36,000, each year from 1992 to 2002. At the time of trial, the PaineWebber account held assets valuing $706,881.86.

In March 2002, Wife filed her complaint for divorce, alleging grounds of irreconcilable differences, inappropriate marital conduct, and adultery. The parties separated and Husband paid Wife temporary support amounts prior to the hearing. Husband left his position at Masco and now works for the Eaton Corporation in Jackson, Mississippi. Currently, he lives with his paramour, whose involvement with Husband led to the parties' divorce. After a hearing in January 2003, the trial court below granted Wife a divorce, awarded Wife the first $40,000 of the proceeds from the marital home and then half of the remaining proceeds, divided the remaining marital property between the parties, awarded Wife an award of alimony *in solido* in the amount of $78,000, awarded Wife her attorney's fees from Husband, granted Wife primary custody of the parties' minor children,

awarded Wife a floating amount of child support, and granted Husband one of the three dependency exemptions for the parties' minor children. Husband appeals to this Court and presents the following issues for our review:

I.      Whether the trial court erred when it found that the increase in Wife's PaineWebber account was separate property and that Husband did not substantially contribute to such property's preservation and appreciation;

II.     Whether the trial court failed to consider the proper statutory factors and, thereby, erred when it equitably divided the marital property of the parties;

III.    Whether the trial court failed to consider the proper statutory factors and erred when it granted Wife attorney's fees and alimony *in solido*;

IV.    Whether the trial court erred when it granted Husband one dependency exemption and Wife two dependency exemptions; and

V.     Whether the trial court erred when it ordered Husband to pay a percentage of the varying bonuses from his employment.

Wife additionally raises the following issue[1] for our consideration:

VI.    Whether Wife is entitled to attorney's fees incurred in defending this appeal.

For the following reasons, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## Standard of Review

When this Court reviews the findings of fact by a trial court sitting without a jury, such review is *de novo* and accorded a presumption of correctness, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 744-45 (Tenn. 2002); *Brown v. Brown*, 913 S.W.2d 163, 167 (Tenn. Ct. App. 1994). Further, awards of both attorney's fees and alimony are afforded an abuse of discretion review by this Court. *Aaron v. Aaron*, 909 S.W.2d 408, 411 (Tenn. 1995) (citing *Storey v. Storey*, 835 S.W.2d 593, 597 (Tenn. Ct. App. 1992); *Crouch v. Crouch*, 385 S.W.2d 288, 293 (Tenn. Ct. App. 1964)); *Clayton v. Clayton*, No. E2000-01413-COA-R3-CV, 2001 Tenn. App. LEXIS 399, at *11-14 (Tenn. Ct. App. May 30, 2001); *Anderton v. Anderton*, 988 S.W.2d 675, 682 (Tenn. Ct. App. 1998) (citing *Garfinkel v. Garfinkel*, 945 S.W.2d 744, 748 (Tenn. Ct. App. 1996); *Jones v. Jones*, 784 S.W.2d 349, 352 (Tenn. Ct. App. 1989)). In addition, with respect to a trial court's property division, we are mindful that trial courts are given wide latitude in equitably dividing marital property and, therefore, this Court will ordinarily defer to the trial judge's decision unless such decision is inconsistent with the factors of Tenn. Code Ann. § 36-4-121(c) or is not supported by a preponderance of the evidence. *Kinard v. Kindard*, 986 S.W.2d 220, 230-31 (Tenn. Ct. App. 1998) (citing *Fisher v. Fisher*, 648 S.W.2d 244, 246 (Tenn. 1983); *Brown*, 913 S.W.2d at 168; *Mahaffey v. Mahaffey*, 775 S.W.2d 618, 622 (Tenn.

---

[1]     In her brief, Wife makes a statement of three additional issues rather than just one. However, two of these three are disposed of in our discussion of the issues Husband raises.

Ct. App. 1989); *Hardin v. Hardin*, 689 S.W.2d 152, 154 (Tenn. Ct. App. 1983)). With regard to the award of dependency exemptions, a trial court's decision will not be reversed by this Court unless it has abused its discretion. *Barabas v. Rogers*, 868 S.W.2d 283, 289 (Tenn. Ct. App. 1993). Finally, this Court also affords the trial court deference in matters of child support and reviews such issues under an abuse of discretion standard. *Hanselman v. Hanselman*, No. M1998-00919-COA-R3-CV, 2001 Tenn. App. LEXIS 166, at \*4 (Tenn. Ct. App. Mar. 15, 2001). "This standard requires us to consider (1) whether the decision has a sufficient evidentiary foundation, (2) whether the trial court correctly identified and properly applied the appropriate legal principles, and (3) whether the decision is within the range of acceptable alternatives." *Id.* (citing *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000)).

## Increase in Value of Separate Property

Husband first argues that the trial court erred when it classified the increase in value of Wife's PaineWebber account as separate property of the Wife. Husband contends that, because of his contributions to the preservation and appreciation of the investment account, such increase in value should be classified as marital property and equitably divided. Tennessee law defines marital property as the following: "'Marital property' includes income from, and any increase in value during the marriage of, property determined to be separate property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation . . . ." Tenn. Code Ann. § 36-4-121(b)(1)(B) (2003). Substantial contribution "may include, but not be limited to, the direct or indirect contribution of a spouse as homemaker, wage earner, parent or family financial manager, together with such other factors as the court having jurisdiction thereof may determine." Tenn. Code Ann. § 36-4-121(b)(1)(D). While the contribution need not be direct, Tennessee requires that "some link between the marital efforts of a spouse and the appreciation of the separate property must be established before the separate property's appreciation is considered marital property." *Langschmidt*, 81 S.W.3d 741, 746 (Tenn. 2002).

Though, in order to constitute a substantial contribution, a spouse's contribution must be real and significant, "[t]hey need not . . . be monetarily commensurate to the appreciation in the separate property's value, nor must they relate directly to the separate property at issue." *Brown*, 913 S.W.2d 163, 167 (Tenn. Ct. App. 1994) (citing *Mahaffey*, 775 S.W.2d at 623). However, any increase in value of a separate asset during a marriage is not marital property unless the non-owning spouse substantially contributed to its preservation and appreciation. *Harrison v. Harrison*, 912 S.W.2d 124, 127 (Tenn. 1995).

We hold that the payment of such taxes, under the facts of this case, constitute a substantial contribution by each party to the preservation and appreciation of the PaineWebber account's increase in value. It is undisputed that Husband's marital income from his employment was used to pay all the taxes on the PaineWebber account's capital gains and dividend income. Because the income used to pay the taxes was marital, this constitutes a contribution by both Husband and Wife. Next, Wife admits that all income generated by the account was always reinvested back into the account to allow it to grow. This trend never changed for a period of almost ten years. Not only did

such actions constitute preserving the separate asset, allowing it to grow rather than using funds in the account to pay taxes, but, by utilizing marital funds to pay the taxes rather than funds in the account itself, such contributions allowed the PaineWebber account to appreciate more than it otherwise would have, if the funds in the account been used to pay the income taxes. *See Mahaffey*, 775 S.W.2d at 623. Finally, given the amount of income generated by the account and the taxes the parties had to pay on such account, such contribution is real, significant, and more than merely indirect. Therefore, such contribution is substantial under these facts. We also note that Husband's income paid the family's expenses and Wife was financially dependent upon Husband. Such indirect contributions have been noted by Tennessee courts in finding a party substantially contributed to the preservation and appreciation of the increase in value of a separate asset. *See e.g. Id.*

In response, Wife cites the Tennessee Supreme Court case of *Langschmidt v. Langschmidt* to support her argument. However, in the *Langschmidt* case, the trial court found that the increase in value of non-IRA assets was completely market-driven. *Langschmidt*, 81 S.W.3d at 744. Despite this finding, the trial court in that case proceeded to find the increase in the asset was marital property due to the non-owning spouse's contributions to the marriage as a homemaker. *Id.* We have searched the record and there was no finding by the trial court that such increase in value was due entirely to market forces and not the payment of income taxes with marital income. For all of these reasons, we hold that the trial court erred when it classified the increase in the PaineWebber account as separate property of Wife. Therefore, we remand this case to the trial court below for an equitable division of this increase in value, which considers all the relevant factors of Tenn. Code Ann. § 36-4-121(c).

### Property Division

Husband argues that the trial court erred when it equitably divided the marital property because it did not consider the statutory factors enumerated in Tenn. Code Ann. § 36-4-121(c). That section of the Tennessee code states:

> (c) In making equitable division of marital property, the court *shall consider* all relevant factors including:
> (1) The duration of the marriage;
> (2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;
> (3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;
> (4) The relative ability of each party for future acquisitions of capital assets and income;
> (5) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

(6) The value of the separate property of each party;
(7) The estate of each party at the time of the marriage;
(8) The economic circumstances of each party at the time the division of property is to become effective;
(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;
(10) The amount of social security benefits available to each spouse; and
(11) Such other factors as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-4-121(c) (2001) (emphasis ours). Given this Court's determination that the increase in the PaineWebber account is marital property, we cannot determine whether the trial court's division was equitable. Therefore, we remand this issue to the trial court for a revised property division, if necessary, in accordance with this opinion that considers the relevant factors of Tenn. Code Ann. § 36-4-121(c).

**Alimony and Attorney's Fees**

Next, Husband argues that the trial court erred when it awarded Wife alimony *in solido*. Husband contends that the trial court failed to consider the relevant factors of Tenn. Code Ann. § 36-5-101(d)(1) and that the trial court awarded alimony to Wife to punish Husband. Tennessee law provides that:

(1)... In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court *shall consider* all relevant factors, including:
(A) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
(B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;
(C) The duration of the marriage;
(D) The age and mental condition of each party;
(E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
(F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;
(G) The separate assets of each party, both real and personal, tangible and intangible;

(H) The provisions made with regard to the marital property as defined in § 36-4-121;

(I) The standard of living of the parties established during the marriage;

(J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-101(d)(1) (2001) (emphasis ours). Of these factors, the need of the obligee spouse and the obligor spouse's ability to pay are the most important. *Anderton*, 988 S.W.2d 675, 683 (Tenn. Ct. App. 1998) (citing *Varley v. Varley*, 934 S.W.2d 659, 668 (Tenn. Ct. App. 1996); *Crain v. Crain*, 925 S.W.2d 232, 234 (Tenn. Ct. App. 1996)); *see also Clayton*, 2001 Tenn. App. LEXIS 399, at *11 (citing *Bull v. Bull*, 729 S.W.2d 673, 675 (Tenn. Ct. App. 1987)). In addition, spousal support awards should not be punitive in nature. *Anderton*, 988 S.W.2d at 682 (citing *Duncan v. Duncan*, 686 S.W.2d 568, 571 (Tenn. Ct. App. 1984); *McClung v. McClung*, 198 S.W.2d 820, 822 (Tenn. Ct. App. 1946)). However, given that the trial court erred when it classified the increase in value of the PaineWebber account as separate property, we are unable to determine whether the award of alimony *in solido* to Wife in the amount of $78,000 was proper. Such correction in the classification of this account's increase in value necessarily affects factors (G) and (H) and could result in a revised award. Therefore, we remand this issue to the trial court for a revised alimony award, if necessary, in accordance with this opinion that considers the relevant factors of Tenn. Code Ann. § 36-5-101(d)(1).

In addition, Husband contends the trial court erred when it awarded Wife her attorney's fees. It is well established that an award of attorney's fees in a divorce is considered a form of spousal support and is characterized as alimony *in solido*. *Wilder v. Wilder*, 66 S.W.3d 892, 894 (Tenn. Ct. App. 2001) (citing *Sannella v. Sannella*, 993 S.W.2d 73, 76 (Tenn. Ct. App. 1999); *Anderton*, 988 S.W.2d at 682; *Smith v. Smith*, 984 S.W.2d 606 (Tenn. Ct. App. 1997); *Gilliam v. Gilliam*, 776 S.W.2d 81 (Tenn. Ct. App. 1988)). For this reason, a trial court must consider the factors enumerated in Tenn. Code Ann. § 36-5-101(d)(1)(E), with the most important factors being the need of the disadvantaged spouse, a demonstrated financial inability to obtain counsel, and the ability of the obligor spouse to pay. *Id.* (citing *Anderton*, 988 S.W.2d at 683; *Cranford v. Cranford*, 772 S.W.2d 48 (Tenn. Ct. App. 1989)). Again, given the change in classification of the increase in value of the PaineWebber account, we are unable to determine the propriety of the award of attorney's fees. Therefore, we also remand this issue to the trial court for a determination of the propriety of an award of attorney's fees in light of the revised marital property division in addition to the other factors enumerated in 36-5-101(d)(1).

## Dependency Exemptions

Husband takes issue with the trial court's division of the dependency exemptions of the parties' minor children. Specifically, Husband argues that the trial court abused its discretion when it awarded Wife the dependency exemptions for the parties' two youngest children and awarded Husband only one dependency exemption for the parties' oldest child. In reviewing a trial court's decision regarding the right to claim a dependency exemption, we are mindful that "[n]othing in the federal law prohibits state courts from exercising their power to order a party to execute the release that would enable the noncustodial parent to obtain the exemption." *Barabas*, 868 S.W.2d at 289 (citing *Hooper v. Hooper*, No. 1130, 1988 Tenn. App. LEXIS 92, at *6-8 (Tenn. Ct. App. Feb. 9, 1988)). As noted above, a trial court's decision with regard to the allocation of dependency exemptions for minor children are discretionary and rest on the facts of the particular case. *Id*. (citing *Thompson v. Thompson*, 1990 Tenn. App. LEXIS 118 (Tenn. Ct. App. Feb. 23, 1990)). In this case, there is insufficient evidence to support the conclusion that the trial court abused its discretion when it allocated two dependency exemptions to Wife and one to Husband. Therefore, we affirm the allocation of the dependency exemptions.

## Child Support Award

Finally, Husband argues that the trial court erred when it ordered him to pay a percentage of his variable income in the form of bonuses. Specifically, Husband contends that such an award is in contravention with the Tennessee Child Support Guidelines. The Guidelines define gross income as the following:

(3) Gross income.

(a) Calculation of Gross Income.

1. Gross income shall include all income from any source (before taxes and other deductions), whether earned or unearned, and includes but is not limited to, the following: wages, salaries, commissions, bonuses, overtime payments, dividends, severance pay, pensions, interest, trust income, annuities, capital gains, benefits received from the Social Security Administration, i.e., Title II Social Security benefits, workers compensation benefits whether temporary or permanent, judgments recovered for personal injuries, unemployment insurance benefits, gifts, prizes, lottery winnings, alimony or maintenance, and income from self-employment.

Tenn. Comp. R. & Regs. R. 1240-2-4-.03(3)(a)(1). The rule further states that "[v]ariable income such as commissions, bonuses, overtime pay, dividends, etc., *shall be averaged and added to the obligor's fixed salary*." Tenn. Comp. R. & Regs. R. 1240-2-4-.03(3)(b). Although the Guidelines do not prescribe how variable income should be averaged, the Guidelines, in discussing the initial child support award, and Tennessee courts, in discussing averaging variable income, exhibit a preference for long-term averaging as the most appropriate method for calculating income that is

variable in nature. *Hanselman*, 2001 Tenn. App. LEXIS 166, at \*10-12 (citing *Alexander v. Alexander*, 34 S.W.3d 456, 464-65 (Tenn. Ct. App. 2000); *Norton v. Norton*, No. W1999-02176-COA-R3-CV, 2000 WL 52819, at \*7 n.7 (Tenn. Ct. App. Jan. 10, 2000); *Stacey v. Stacey*, No. 02 A01-9802-CV-00050, 1999 WL 1097975, at \*4 (Tenn. Ct. App. Oct. 6, 1999); *Smith v. Smith*, No. 01 A01-9705-CH-00216, 1997 WL 672646, at \*3 (Tenn. Ct. App. Oct. 29, 1997); *Bell v. Bell*, No. 01 A01-9511-CH-00493, 1996 WL 548150, at \*1 (Tenn. Ct. App. Sept. 25, 1996)).

In this case, the trial court ordered Husband to pay child support based upon Husband's base salary of $105,000. The trial court then ordered Husband to pay 41% of any bonuses Husband earned within thirty days of receiving such bonus. Such "floating" child support awards are inconsistent with Tennessee's Child Support Guidelines and Tenn. Code Ann. § 36-5-101(a)(2)(A) which requires trial courts to fix "some definite amount" for child support payments. Therefore, we reverse the child support award and remand for a redetermination of child support based on an average of Husband's gross income over a long term period that includes the bonuses Husband has earned in the average.

### Attorney's Fees for this Appeal

Wife argues that she should be entitled to the attorney's fees she has incurred on this appeal because Husband's appeal is motivated by a desire to escape his obligation to Wife. Given this Court's disposition of this case, it would be inappropriate to award Wife her attorney's fees incurred on this appeal.

### Conclusion

For the reasons stated above, we affirm in part, reverse in part, and remand this case for further proceedings consistent with this opinion. Costs are adjudged equally against Appellant, Egon H. Shuett, Jr., and his surety, and Appellee, Jeanne L. Shuett, for which execution may issue if necessary.

ALAN E. HIGHERS, JUDGE